MICHELE BECKWITH
Acting United States Attorney
KEVIN C. KHASIGIAN
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone: (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> REAL PROPERTY LOCATED AT 1238 W. ROBIN DRIVE, VISALIA, CALIFORNIA, TULARE COUNTY, APN: 090-041-009, INCLUDING ALL APPURTENANCES AND IMPROVEMENTS THERETO, and <br><br> REAL PROPERTY LOCATED AT 4088 WEYMOUTH LANE, SACRAMENTO, CALIFORNIA, SACRAMENTO COUNTY, APN: 049-0310-020, INCLUDING ALL APPURTENANCES AND IMRPROVEMENTS THERETO, <br><br> Defendants. | VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |

The United States of America, by and through its attorney, Michele Beckwith, Acting United States Attorney for the Eastern District of California, for its verified complaint alleges, upon information and belief, as follows:

///

///

///

1

## NATURE OF ACTION

1. This is a civil action *in rem*, brought by the United States for forfeiture of two real properties purchased and improved with mail fraud and money laundering proceeds.

## JURISDICTION AND VENUE

2. This action is brought by the United States of America pursuant to Title, 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C), seeking the forfeiture of real properties connected to federal mail fraud and money laundering crimes, including the following:

   a. Real property located at 1238 W. Robin Drive, Visalia, California, Tulare County, APN: 090-041-009, more fully described in Exhibit A (defendant "1238 W. Robin Drive"), and

   b. Real property located at 4088 Weymouth Lane, Sacramento, California, Sacramento County, APN: 049-0310-020, more fully described in Exhibit B (defendant "4088 Weymouth Lane").

   Collectively, the defendant real properties.

3. The recorded owner of 1238 W. Robin Drive is the Edwards Melinda Family Trust of which Melinda Edwards is the Trustee. The recorded owner of 4088 Weymouth Lane is the Marvin C. Collins Trust of which Marvin C. Collins is the Trustee.

4. This Court has jurisdiction over an action commenced by the United States under Title 28, United States Code, Section 1345 and over an action for forfeiture under Title 28, United States Code, Section 1355(a).

5. This district is a proper venue pursuant to Title 28, United States Code, Section 1355 because the acts giving rise to this *in rem* forfeiture action occurred in this district, and pursuant to Title 28, United States Code, Section 1395 because the defendant real properties are located in this district.

## FACTUAL ALLEGATIONS

6. In 2020, the IRS began investigating Marvin Charo Collins ("Collins") for allegedly committing tax fraud and using the proceeds of his scheme to purchase two real properties located in Sacramento and Visalia, respectively. The IRS's investigation focused on Collins' tax returns in the mid-2010s, which sought large tax refunds based on a scheme used by tax protestors and the sovereign citizen movement to obtain tax refunds they are not entitled to receive. The scheme involves submitting "Form 1099-OIDs" with their tax return—the Form 1099-OIDs allegedly unlock certain amounts held for their

benefit in a "secret account" purportedly created by the U.S. government for every citizen at birth. The amounts listed on the Form 1099-OIDs often link to household purchases, family investments, and other costs borne by the taxpayer during that year. In some Form 1099-OID schemes, the "redeemed amount" may be totaled and then offset by the taxpayer's income during that year. In fact, there is no secret "redemption" account for U.S. citizens and seeking a refund—or taking a deduction—based on a Form 1099-OID is a farce, motivated solely by greed and not in truth.

7. IRS agents have learned that Collins filed false tax returns—Forms 1041 U.S. Income Tax Return for Estates and Trusts ("Form 1041")—for 2017 and 2018 premised on the "Form 1099-OID redemption" scheme explained above. Unlike Collins' tax returns for 2013 through 2016 that were typed and electronically filed, his 2017 tax return was handwritten and filed with the IRS by mail. Next to Collins' signature on the 2017 return was Collins' handwritten notation "All Right[s] [sic] Reserved UCC 1-207/1-308," dated "02/26/18." The citation to UCC sections in the signature block is a common feature of the Form 1099-OID redemption scheme.

8. In mid-2017, Collins filed a UCC Financing Statement declaring that he was the beneficiary of $500,000 in collateral funds held by J.P. Morgan Chase and the collateral is maintained in a J.P. Morgan Chase account ending in x4151. Collins filed a second UCC Financing Statement purporting to show that he mailed a $500,000 check to J.P. Morgan Chase—a financial proclamation that the bank holds $500,000 in collateral on his behalf. Chase Bank stamped the check as "Altered/Fictitious" and returned it to Collins in July 2017.

9. In his tax returns for 2013 through 2016, Collins claimed unemployment as his sole source of income, reporting taxable income of: $16,198.00, $4,950.00, $10,189.00, and $8,424.00, respectively. Collins' 2017 tax return similarly claimed unemployment as his only income for that year— in the amount of $8,346—but for the first time included a Form 1041 "as a fiduciary for the Marvin C. Collins Estate." The Form 1041 states that Collins' "estate entity" was created on June 9, 2017, and then reports $500,100.01 in interest income and income tax withholding, resulting in a refund due to Collins in the amount of $500,100.01.

10. In Collins' 2017 tax return, he supported his purported "interest income" with a Form 1099-A, an informational report covering acquisitions and abandonments of secured property, listing the

$500,100.01 in interest income as "Total checking deposits" owed by JP Morgan Chase, a multinational bank. Collins estimated the value at $5,000,100.10. In the margin of the Form 1099-A, Collins handwrote the following, "Date of Lender's Acquisition or Knowledge of Abandonment" is "01-01-17 to 12-31-17," seemingly to correlate the income claimed to tax year 2017.

11. In November 2018, the IRS processed Collins' 2017 tax return and, based on the information Collins submitted as his genuine financials for the year, determined he was owed a refund of $312,245.85, not the requested refund amount of $500,100.01. In early November 2018, the IRS issued Collins a refund check in the amount of $312,245.85, which Collins deposited into a Wells Fargo Bank account ending in x1522 on November 14, 2018. The Wells Fargo account had a balance of roughly $481 before the deposit and is maintained in the name of "Marvin C. Collins Trust/Marvin C. Collins, Trustee."

12. On November 15, 2018, Collins used $109,000 of the refund money to purchase a single-family residence located at 4088 Weymouth Lane in Sacramento. Initially, Collins held ownership to Weymouth Lane through the "Marvin C. Collins Estate," but he transferred the home's title to "Marvin C. Collins as Trustee of the Marvin C. Collins Trust" five years after purchasing the residence.

13. In December 2018, Collins used approximately $104,000 of the refund money to purchase a second home located at 1238 W. Robin Drive in Visalia. On December 21, 2018, Collins wrote a $500 check from Wells Fargo Bank account ending in x1522 to First American Title Company to open escrow for 1238 W. Robin Drive. Six days later, Collins wrote a $104,000 check from the Wells Fargo account to First American Title to cover most of the home's purchase price—Collins later added $32,600 for closing costs, which was funded with money from Safe Credit Union account number 100158661-09 ("Safe CU account").

14. The Safe CU account is held in the name of NestEggVault & Co., Inc. ("NestEgg"). According to the California Secretary of State, Collins is NestEgg's Agent for Service of Process and prepared and signed its Articles of Incorporation. The funds deposited into escrow for 1238 W. Robin Drive are traceable to a $50,000 cashier's check drawn from a Bank of America account, also maintained by NestEgg. Bank records show the $50,000 check originated from the $312,245.85 in tax fraud proceeds received by Collins in November of 2018.

15. Nearly two and a half years later, after seeing the success of his scheme, Collins doubled down to extract more refund money from the IRS and submitted by mail an amended 2017 Form 1041 for the Marvin C. Collins Estate ("MCCE"), also handwritten, seeking a $921,100.01 refund. As with the initial 2017 MCCE Return, the amended return showed $921,100.01 in purported business income with an equal amount in federal tax withholding. The $921,100.01 was inclusive of the $500,100.01 claimed in the initial 2017 return. The additional $421,000 was supported by a Form 1099-OID purporting that Fidelity National Financial, Inc. and Chicago Title Insurance Co. are the possessors of $421,000 in collateral that Collins supplied them on April 28, 2020. The amended return was sent to "Department of the Treasury, Internal Revenue Service, Ogden, UT 84201-0048" by certified mail with a postage paid date of June 17, 2020. The IRS received the amended return on July 6, 2020. The IRS did not issue a refund based on this return.

16. The IRS's investigation revealed that the claimed $421,000 relates to an attempted real property purchase in or around June 2017. According to property and other financial records, the purchase price was $421,000. The title company facilitating the sales transaction never received the purchase price from Collins. Following a series of email and phone communications between the title company and Collins, the title company cancelled the transaction. On July 29, 2017, Collins filed with the California Secretary of State a UCC Financing Statement for $421,000 and declared that it was secured by a Promissory Note made July 25, 2017.

17. In early 2019, Collins attempted his second tax fraud, claiming $1,178,374.31 was withheld from his $1,186,604.15 in 2018 income, resulting in a million-dollar tax refund. The IRS denied Collins' refund request because his 2018 tax return was completely unsupported because he did not file a Form 1099, 1099-OID, or 1099-A. Months later, Collins corrected his mistakes and filed an amended 2018 tax return—now supported with a handwritten Form 1041—seeking a refund of nearly one million dollars. In March 2020, the IRS processed Collins' 2018 tax return and issued a refund in the amount of $682,768.31, adjusting the refund amount based on Collins' math errors.

18. Collins deposited the $682,768.31 refund into his Wells Fargo account ending in x1522 on March 31, 2020. Collins then used the fraud proceeds to improve the two properties purchased using the refund from the false 2018 tax return, pouring over $100,000 into upgraded interior finishes such as stone

countertops and high-end flooring, as well as lush landscaping, fresh paint, and new fencing. In addition to these renovations, Collins spent nearly $40,000 on a property manager for the two properties over a few months. Collins divided the remainder of the refund among family, friends, himself, precious metals purchases, and ordinary personal expenses such as food and groceries.

19. In June 2021, the IRS determined that the $682,768.31 refund for tax year 2018 should not have issued and assessed tax and penalties against Collins in the amount of $1,123,000. Collins has not made any payments toward this tax debt.

20. On October 22, 2024, Collins transferred ownership of 1238 W. Robin Drive from his trust to his mother's trust (Melinda Edwards), the Edwards Melinda Family Trust.

21. On October 24, 2024, a Grand Jury in Eastern District of California indicted Collins on five counts of False Claims Against the United States in violation of 18 U.S.C. § 287, *United States v. Marvin Charo Collins*, Case No. 1:24-CR-00255-JLT-SKO. The criminal trial against Collins is scheduled to begin U.S. District Court in late July 2025.

### FIRST CLAIM FOR RELIEF
### 18 U.S.C. § 981(a)(1)(C)

22. Paragraphs one to twenty-one are incorporated by reference as though fully set forth herein.

23. The defendant real properties were derived from proceeds traceable to an offense constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), which incorporates the definition of "specified unlawful activity" found in 18 U.S.C. § 1961(1) and are therefore subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C). Mail Fraud in violation of 18 U.S.C. § 1341, constitutes "specified unlawful activity" as defined in §§ 1961(1) and 1956(c)(7).

### SECOND CLAIM FOR RELIEF
### 18 U.S.C. § 981(a)(1)(A)

24. Paragraphs one to twenty-three are incorporated by reference as though fully set forth herein.

25. The defendant real properties, including any right, title, and interest in the whole of any lot or tract of land and any appurtenances or improvements thereon, are subject to forfeiture to the United

States pursuant to 18 U.S.C. § 981(a)(1)(A) because they were involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957, offenses punishable by more than one year's imprisonment.  Specifically, certain individuals knowingly engaged or attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from a specified unlawful activity.  Mail Fraud, a violation of 18 U.S.C. § 1341, and money laundering, a violation of 18 U.S.C. § 1957, constitute "specified unlawful activity" as defined in § 1961(1).

26. The United States does not request authority from the Court to seize the defendant real properties at this time.  The United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

    a. Post notice of this action and the Complaint on the defendant real properties,

    b. Serve notice of this action on the defendant real property owners along with a copy of this Complaint; and

    c. File with the county where the defendant real properties are located a lis pendens providing noticing of the properties' status as defendant in this *in rem* forfeiture action.

27. Title 18 U.S.C. § 985(c)(3) provides that, because the United States will post notice of this Complaint on the defendant real properties, it is not necessary for the Court to issue an arrest warrant *in rem*, or to take any other action to establish *in rem* jurisdiction over the defendant real properties.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that:

1. Process issue according to the procedures of this Court in cases of actions *in rem;*

2. Any person having an interest in said defendant real properties be given notice to file a claim and to answer the complaint;

3. The Court enter a judgment of forfeiture of said defendant real properties to the United States; and

///

///

///

///

4. The Court grant such other relief as may be proper.

Dated: July 7, 2025

MICHELE BECKWITH
Acting United States Attorney

By:  /s/ Kevin C. Khasigian
KEVIN C. KHASIGIAN
Assistant U.S. Attorney

**VERIFICATION**

I, Michelle Eng, hereby verify and declare under penalty of perjury that I am a Special Agent with the Internal Revenue Service – Criminal Investigations, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the Internal Revenue Service – Criminal Investigations.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: July 3, 2025

/s/ Michele Eng
MICHELE ENG
Special Agent
Internal Revenue Service – Criminal Investigations
(Original signature retained by attorney)

**Exhibit A**

Real property located at 1238 W. Robin Drive, Visalia, California

Lot 26 of Tract No. 260, in the City of Visalia, County of Tulare, State of California, as per Map recorded in Book 22, Page 11 of Maps, in the office of the County Recorder of said County.

APN: 090-041-009

**Exhibit B**

Real property located at 4088 Weymouth Lane, Sacramento, California

Lot 20, as shown on the "Plat of Villa Town Homes," recorded in Book 85 of Maps, Map No. 21, records of said County.

APN: 049-0310-020